COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

December 3, 2024

Elizabeth Wilburn Joyce
Megan Ix Brison
Pinckey, Weidinger, Urban & Joyce LLC
2 Mill Road, Suite 204
Wilmington, DE 19806

Jack Shrum
Jack Shrum, P.A.
919 N. Market Street, Suite 1410
Wilmington, DE 19801

Re:     *Paul Elton, LLC v. Rommel Delaware, LLC, et al.*,
        C.A. No. 2019-0750-KSJM

Dear Counsel:

This letter opinion resolves the plaintiff's motion for entry of final judgment. I assume the readers' familiarity with this action given my prior decisions in this matter.[1]

By way of brief background, in 2008, Plaintiff Paul Elton, LLC ("Plaintiff") leased property holding a Harley-Davidson dealership to Defendant Rommel Motorsports Delaware, Inc. ("Motorsports").[2] The lease agreement gave Motorsports an option to purchase the parcel of land on which the dealership and other buildings were located.[3] Upon exercising the option, Motorsports would pay a fixed price up

---

[1] *Paul Elton, LLC v. Rommel Del., LLC*, 2022 WL 17101346 (Del. Ch. Nov. 22, 2022); *Paul Elton, LLC v. Rommel Del., LLC*, 2022 WL 3081441 (Del. Ch. Aug. 3, 2022); *Paul Elton, LLC v. Rommel Del., LLC*, 2022 WL 793126 (Del. Ch. Mar. 16, 2022); *Paul Elton, LLC v. Rommel Del., LLC*, 2021 WL 6141588 (Del. Ch. Dec. 30, 2021); *Paul Elton, LLC v. Rommel Del., LLC*, 2020 WL 2203708 (Del. Ch. May 7, 2020).

[2] C.A. No. 2019-0750-KSJM, Docket ("Dkt.") 1, Verified Complaint ("Compl.") ¶¶ 3, 6; Dkt. 33, Answer ("Answer") ¶¶ 3, 6.

[3] *See* Dkt. 49, Ex. 6 ("Lease Agr.").

front and half of any proceeds later derived from the lease or sale of the additional space holding the other buildings (the "Additional Space").[4]  The lease provided that Motorsports could be held liable for any assignee's failure to fulfill Motorsports's obligations.[5]  Defendant David Rommel signed the lease agreement on behalf of Motorsports and as a guarantor.[6]

In 2010, Motorsports assigned its option to Defendant Rommel Delaware, LLC ("Rommel Shell," together with Motorsports and Rommel, "Defendants"), which then exercised the option and purchased the property pursuant to a purchase agreement (the "Purchase Agreement").[7]  The Purchase Agreement preserved Plaintiff's right to the proceeds from the sale of the Additional Space (the "Proceeds Right").[8]  Nothing in the agreement released Motorsports, as assignor, or Rommel, as guarantor, from liability for Rommel Shell's failure to honor Plaintiff's Proceeds Right.

In 2017, Rommel Shell agreed to sell the property, including the Additional Space, to a third party.[9]  In October 2018, Plaintiff learned of the sale and demanded its share of the proceeds under the Proceeds Right.[10]  Defendants claimed in response

---

[4] *Id.* § K.

[5] *Id.* § 18.

[6] *See* Lease Agr. at 3.

[7] *See* Dkt. 49, Ex. 7.

[8] *Id.* § 4.

[9] *See* Dkt. 49, Ex. 8.

[10] Compl. ¶ 39; Answer ¶ 39.

that there was nothing to pay because no adjacent property was involved, and the property sold at a significant loss.[11]

I granted summary judgment for Plaintiff, finding Defendants liable for breach of the Proceeds Right by failing to pay Plaintiff for the sale of the Additional Space.[12] The Purchase Agreement provides that if the parties cannot agree on the value of the Additional Space after a sale, they shall each select an appraiser to assess the value of the lease of the Additional Space.[13] If the two appraisals are less than 5% divergent in value, then the price is the average of the two appraisals.[14] If the two appraisals are more than 5% divergent, however, then the two appraisers shall select a third appraiser and the average of the two closest appraisals shall be the value of the Additional Space.[15] As relief, I ordered Defendants to specifically perform their obligation to participate in the appraisal process for valuing the Additional Space.[16]

A dispute arose during the appraisal process. The parties selected their respective appraisers and obtained appraisals, which were more than 5% divergent. Plaintiff's appraiser valued the Additional Space at $5.6 million,[17] and Defendants'

---

[11] *See* Dkt. 49, Ex. 27.

[12] *Paul Elton, LLC v. Rommel Delaware, LLC*, 2021 WL 6141588 (Del. Ch. Dec. 30, 2021).

[13] Purchase Agr. § 4.

[14] *Id.*

[15] *Id.*

[16] *Rommel*, 2021 WL 6141588, at *7.

[17] Dkt. 111 ("Pl.'s Mot.") ¶ 8.

appraiser valued the Additional Space at $1.74 million.[18] Part of the discrepancy in appraisal values derived from the appraisers' different understandings of the term "Additional Space." I resolved this dispute, holding that the Additional Space referred to the 2.5 acres as represented by Plaintiff.[19] I then gave Defendants two options. One was to double Defendants' appraised value for the 1.25 acres. The other was to allow Defendants to commission a new appraisal of the 2.5 acres. I asked Defendants to report on their position within five days. Defendants instead moved to reargue that decision, and alternatively requested that they be permitted to conduct a new appraisal. I granted the alternative request.[20]

Defendants conducted a new appraisal that valued the Additional Space at $3.27 million.[21] Because Plaintiff's valuation ($5.6 million) and Defendants' valuation ($3.27 million) were more than 5% apart, the parties stipulated to the appointment of Jeffrey H. Merrick as a third appraiser.[22]

On September 18, 2023, Merrick issued his initial appraisal report, dated August 15, 2023, which valued the Additional Space as of April 17, 2018, at $4.4

---

[18] Dkt. 92, Ex. A at 9.

[19] *Paul Elton, LLC v. Rommel Delaware*, LLC, 2022 WL 3081441, at *5 (Del. Ch. Aug. 3, 2022), *reargument denied*, 2022 WL 17101346 (Del. Ch. Nov. 22, 2022).

[20] *Paul Elton, LLC v. Rommel Delaware, LLC*, 2022 WL 17101346 (Del. Ch. Nov. 22, 2022).

[21] Dkt. 116 ("Defs.' Opp.") ¶ 8.

[22] Dkt. 109.

million.[23]  On October 4, 2023, Defendants emailed Merrick and attached documents for Merrick's review.[24]  Defendants asked that Merrick "let [them] know what impact they have on your initial appraisal of the 2.5 acre site."[25]  On October 5, 2023, Merrick sent a revised appraisal, dated October 4, 2023, that maintained the $4.4 million valuation.[26]  On January 24, 2024, Merrick again revised his initial appraisal report and concluded that the value of the Additional Space as of April 17, 2018, was $4.9 million.[27]  The second revised appraisal report noted: "This appraisal document is a revision of previous versions to account for certain aspects of site development costs and projected operating expenses."[28]

After the appraiser issued his second revised appraisal, Plaintiff sent Defendants a proposed form of final order confirming that Plaintiff was entitled to 50% of the final value of $5.25 million.  Defendants failed to respond, and Plaintiff moved for an entry of final judgment.[29]

Defendants oppose the motion for entry of final judgment on three grounds.

First, Defendants argue that final judgment is not warranted because the court's earlier decision should be revisited.  Defendants state that "[f]or the reasons

---

[23] Pl.'s Mot., Ex. 2 at b.

[24] Dkt. 119 ("Pl.'s Reply"), Ex. D.

[25] *Id.* at 1.

[26] Pl.'s Mot., Ex. 3 at b.

[27] Pl.'s Mot., Ex. 4 at b.

[28] *Id.*

[29] *See* Pl.'s Mot.

set forth in Defendants' Motion Against Entry of Second Order Governing Appraisal Process . . . and Motion for Reargument and Other Relief . . . , this Court should not enter judgment on appraisals which value a 2.5 acre parcel as the correct parcel size to be valued is 1.5 acres."[30] It is not clear what Defendants are arguing here, but if they are asking to relitigate the court's previous rulings, the time for that has passed,[31] and the request is denied.

Second, Defendants argue that final judgment is not warranted because Merrick was not permitted to revise his appraisal, and thus his initial appraisal is the operative appraisal for determining the final value of the Additional Space.[32] This argument fails; Merrick's revisions to his initial appraisal do not constitute new appraisals under the terms of the Purchase Agreement.

The Purchase Agreement provides that:

> [E]ach party shall, within five (5) days, select an appraiser to complete an appraisal of the value of the lease for the Additional Space. The appraisals shall be completed within sixty (60) days of the time of the appraisers selected [sic]. In the event that the difference of the two appraisals is five percent (5%) or less, then the average of the two appraisals shall be the price. If the difference is more than five percent (5%), then the two appraisers shall, within ten (10) days, select a third appraiser and the average of the two closest

---

[30] Defs.' Opp. ¶ 13.

[31] *Sciabacucchi v. Malone*, 2021 WL 3662394, at \*4 (Del. Ch. Aug. 18, 2021) ("Once a matter has been addressed . . . it is generally held to be the law of that case and will not be disturbed by that court unless compelling reason to do so appears") (alterations in original) (quoting *Guy v. State*, 913 A.2d 558, 562 n.2 (Del. 2006)).

[32] Defs.' Opp. ¶ 14 ("The Purchase Agreement makes no mention of the third appraiser conducting multiple appraisals, or of any right the parties have to appeal or challenge the appraisal.").

> appraisals shall be the [value of the Additional Space]. All appraisers selected shall be licensed commercial real estate appraisers in the State of Delaware having at least ten (10) years experience. The costs of the three appraisals shall be shared equally between [Rommel Delaware] and [Plaintiff].[33]

The language of the Purchase Agreement does not foreclose the appraiser from revising his appraisal to correct errors. This language directs the appraiser to "complete" the appraisal. "Appraisal" is the value reached, revised or otherwise, by the selected individual. The language favors Plaintiff.

The parties' course of conduct too favors Plaintiff.[34] Both parties treated the August 15, 2023 appraisal as an "initial" appraisal, implying that it would be revised. And both parties asked Merrick to revise his appraisal.[35] Merrick viewed his earlier versions as initial.[36] The implied conclusion is that both parties understood that a final, and potentially revised, appraisal would follow. It did. The January 19, 2024

---

[33] Purchase Agr. § 4.

[34] *See Preferred Fin. Servs., Inc. v. A & R Bail Bonds LLC*, 2019 WL 315331, at *4 (Del. Super. Ct. Jan. 23, 2019), *aff'd*, 217 A.3d 60 (Del. 2019) (holding that testimony concerning the parties' post-signing transactions "evidence a course of conduct that transpired after the [a]greement was signed and demonstrate how the parties performed under the agreement. . . . [such] testimony . . . is not improper parol evidence, and the Court is free to consider it.").

[35] Pl.'s Reply, Ex. D at 1 ("Please review or re-review these documents again and let us know what impact they have on your initial appraisal of the 2.5 acre site."); Defs.' Opp., Ex. 2 at 1 (Plaintiff calling the August 15, 2023 appraisal, the "initial appraisal").

[36] Pl.'s Mot., Ex. 4 at b (stating the January 19, 2024 appraisal is "a revision of previous versions to account for certain aspects of site development costs and projected operating expenses").

revision to Merrick's appraisal constitutes the operative appraisal. Defendants' second argument is wrong.

Third, Defendants argue that Plaintiff is not entitled to: (a) pre-judgment interest, (b) post-judgment interest, or (c) court costs.

"[P]rejudgment interest is awarded as a matter of right and computed from the day payment is due."[37] Defendants argue that because the amount of damages here was "not readily ascertainable, it would be unfair to compel a defendant to pay pre-judgment interest."[38] Defendants cite to *Lum v. Nationwide Mutual Insurance Co.* for support, but that case involved projected future income in the insurance context.[39] Here, the total figure might be variable but it is governed by a straight-forward formula both parties agreed to. To read otherwise would mean that a successful party is not entitled to pre-judgment interest unless the damages amount is explicitly stated in the agreement—that is not the law.

Plaintiff requests pre-judgment interest, compounded annually, for the period beginning when the Additional Space was sold on April 17, 2018, through the date that the third appraiser was appointed, February 7, 2023.[40] As this court articulated in *Brown v. Court Square Capital Management, L.P.*, compound interest is wholly

---

[37] *Brown v. Court Square Cap. Mgmt., L.P.*, 2024 WL 1655418, at *2 (Del. Ch. Apr. 17, 2024), *aff'd* 2024 WL 4865947 (Del. Nov. 22, 2024) (citing *Moskowitz v. Mayor and Council of Wilm.*, 391 A.2d 209, 210 (Del. 1978)).

[38] Defs.' Opp. ¶ 20.

[39] 1982 WL 1585 (Del. Super. Apr. 27, 1982).

[40] Pl.'s Mot. ¶ 33.

consistent with the practice of this court.[41]  Defendants have not articulated a reason why interest here should not be so calculated.  Accordingly, Plaintiff is entitled to pre-judgment interest.

Defendants argue that "for similar reasons" that are not explained, "Plaintiff is also not entitled to an award of post-judgment interest."[42]  But post-judgment interest is statutorily mandated and calculated from the date of judgment.[43]  So that argument fails too.  Post-judgment interest is set at the legal rate as provided under 6 *Del. C.* § 2301 and shall be compounded annually, per Plaintiff's request.[44]

Defendants argue that "the Court should deny Plaintiff's requests for costs in its discretion and because the Court's summary judgment order does not include such an award."[45]  I was not asked to consider costs on summary judgment.  The absence of that request at the summary judgment stage is not determinative.  Court of Chancery Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the Court otherwise directs."[46]  Plaintiff prevailed and is therefore entitled to costs.

---

[41] 2024 WL 1655418, at *4–5; *see also In re Columbia Pipeline Gp., Inc. Merger Litig.*, 316 A.3d 359, 405 n.161 (Del. Ch. 2024) (compiling history of compound interest).

[42] Defs.' Opp. ¶ 25.

[43] 6 *Del. C.* § 2301.

[44] Dkt. 111, [Proposed] Order and Final Judgment at ¶ 4.

[45] Defs.' Opp. ¶ 26.

[46] Ct. Ch. R. 54(d).

Plaintiff's motion is granted.  I will enter the proposed order on the docket dated April 11, 2024.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:    All counsel of record (by *File & ServeXpress*)